## IN THE UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

MODULUS-X PRECISION MACHINING
LTD.,
     *Plaintiff,*

   v.

MODTRUSS, INC.,

     *Defendant*,

and DOES 1-10, INCLUSIVE,

     *Defendant.*

———————————————

MODTRUSS, INC.,

     *Counterclaim Plaintiff,*

   v.

MODULUS-X PRECISION MACHINING
LTD.; KEY RIGGING EQUIPMENT LTD.;
and DEAN COLLINS,

     *Counterclaim Defendants*.

Case No. 1:24-cv-04377-ELR

## <u>MEMORANDUM IN SUPPORT OF</u>
## <u>COUNTERCLAIM DEFENDANTS' MOTION TO DISMISS</u>

# TABLE OF CONTENTS

I.   INTRODUCTION ....................................................................................1

II.  PROCEDURAL HISTORY .....................................................................2

III. STATEMENT OF FACTS ........................................................................3

    A.   Mr. Dean Collins ....................................................................3

    B.   Key Rigging Equipment LTD. ...................................................4

IV.  ARGUMENTS AND CITATIONS OF AUTHORITY ....................................5

    A.   Lack of Subject Matter Jurisdiction .............................................5

        1.   ModTruss Cannot Assert A Claim Of Infringement For A Canadian Trademark. ...........................................................................6

        2.   This Court Lacks Jurisdiction to Hear ModTruss's Contract Claims Against Key Rigging and Collins. ......................................................7

    B.   Lack of Personal Jurisdiction .............................................9

        1.   Georgia's Long Arm Statute Does Not Authorize the Exercise of Personal Jurisdiction Over Key Rigging or Collins. ......................11

            i.   They Do Not Transact Any Business in Georgia. .......................11

            ii.  They Have Not Committed Any Tortious Act in Georgia. .........12

            iii. They Do Not Have Any Regular or Persistent Conduct in Georgia, Nor Do They Derive Revenue From Georgia. .............14

        2.   Counterclaim Defendants Lack Necessary Minimum Contacts.......15

            i.   ModTruss Cannot Establish General Jurisdiction. ......................15

            ii.  ModTruss Cannot Establish Specific Jurisdiction. ....................16

iii. Exercising Personal Jurisdiction Would Offend Traditional Notions Of Fair Play And Substantial Justice. ...........................19

C.    FAILURE TO STATE A CLAIM ................................................................21

1.    Counterclaim 10 Fails to State A Claim For Relief Against Collins and Exceeds the Statute of Limitations. .............................................22

2.    Counterclaim 8 Fails To State A Claim Under Georgia Common Law Misappropriation And Conversion. ..........................................24

3.    Counterclaims 1-7 And 9 Fail To State A Claim. ...........................25

4.    Counterclaims 9-10 Fail To State A Claim Due To Exceeding Georgia's Contractual Statute Of Limitations. ................................27

V.    CONCLUSION ................................................................................................28

# TABLE OF AUTHORITIES

## CASES

*Allegiant Physicians Servs. v. Sturdy Mem. Hosp.*,

    926 F. Supp. 1106 (N.D. Ga. 1996)........................................................20

*Anderson v. Deas*, 615 S.E.2d 859 (Ga. Ct. App. 2005) ..........................................12

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009)............................................................ 21, 22

*Atlanta Mkt. Ctr. Mgmt., Co. v. McLane,* 503 S.E.2d 278 (Ga. 1998)...................23

*Baltin v. Alaron Trading Corp.*, 128 F.3d 1466 (11th Cir. 1997) ............................5

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007)............................................ 21, 22

*BNSF Railway Co. v Tyrrell*, 581 U.S. 402 (2017) ..................................................16

*Bristol-Myers Squibb Co. v. Super. Ct. of Calif.*, *San Fancisco Cnty.*,

    582 U.S. 255 (2017)....................................................................... 16, 17

*Brown v. Ford Motor Co.*, 347 F. Supp. 3d 1347 (N.D. Ga 2018).................... 9, 10

*Burger King Corp. v. Rudzewicz*, 471 U.S. 462 (1985).................................. 11, 20

*Carlsbad Tech., Inc. v. HIF Bio, Inc.*, 556 U.S. 635 (2009).....................................5

*Catholic Stewardship Consultants, Inc. v. Ruotolo Assocs., Inc.*,

    608 S.E.2d 1 (Ga. Ct. App. 2004)........................................................15

*Chanel, Inc. v. Handbag Store*, No. 20-CV-62121, 2021 WL 3060329

    (S.D. Fla. June 30, 2021) ......................................................................25

*City of Chicago v. Int'l College of Surgeons*, 522 U.S. 156 (1997). .........................8

*Com. Cas. Ins. Co. v. BSE Mgmt., Inc.*, 734 F. Supp. 511 (N.D. Ga. 1990). ...........9

*Contract Furniture Refinishing & Maint. Corp. v. Remanufacturing & Design*

    *Grp., LLC*, 730 S.E.2d 708 (Ga. Ct. App. 2012). ................................................24

*Daimler AG v. Bauman*, 571 U.S. 117 (2014) .......................................................16

*E. Remy Martin & Co., S.A. v. Shaw-Ross Int'l Imps., Inc.*,

    756 F.2d 1525 (11th Cir. 1985) ...........................................................................7

*Ford Motor Co. v. Montana Eighth Jud. Dist. Ct.*, 592 U.S. 351 (2021)........ passim

*Goodyear Dunlop Tires Operations, S.A. v. Brown,* 564 U.S. 915 (2011). ...........17

*Int'l Café v. Hard Rock Cafe Int'l*, 252 F.3d 1274 (11th Cir. 2001) ....................6, 7

*Int'l Cosms. Exch., Inc. v. Gapardis Health & Beauty, Inc.*,

    303 F.3d 1242 (11th Cir. 2002) ...........................................................................6

*Int'l Shoe Co. v. Washington*, 326 U.S. 310 (1945). ....................................... 10, 19

*LabMD, Inc. v. Tiversa, Inc.*, 509 F. App'x 842 (11th Cir. 2013) .........................12

*Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 572 U.S. 118 (2014). .......26

*Long v. A.L. Williams & Assocs., Inc.*, 323 S.E.2d 868 (Ga. Ct. App. 1984) .........23

*Louis Vuitton Malletier, S.A. v. Mosseri*, 736 F.3d 1339 (11th Cir. 2013) ............18

*Madara v. Hall*, 916 F.2d 1510 (11th Cir. 1990). ........................................... 19, 20

*Meadow Springs, LLC v. IH Riverdale, LLC*, 747 S.E.2d 47 (Ga. Ct. App. 2013).23

*Meenaxi Enter., Inc. v. Coca-Cola Co.*, 38 F.4th 1067 (Fed. Cir. 2022) .................6

*Microsoft Corp. v. AT&T Corp.*, 550 U.S. 437 (2007)...................................... 25, 26

*Morris v. SSE, Inc.*, 843 F.2d 489 (11th Cir. 1988)....................................................9

*Opteum Fin. Servs., LLC v. Spain*, 406 F. Supp. 2d 1378 (N.D. Ga. 2005)............24

*Papasan v. Allain*, 478 U.S. 265 (1986) ..................................................................21

*Parks LLC v. Tyson Foods, Inc*, 863 F.3d 220 (3d Cir. 2017). ...............................26

*Pizza Hut, Inc. v. Papa John's Int'l, Inc.*, 227 F.3d 489 (5th Cir. 2000). ...............27

*Real v. Moran*, No. 22-12770, 2023 WL 6891273 (11th Cir. Oct. 19, 2023) .........22

*Rowe v. Gary, Williams, Parteni, Watson & Gary, P.L.L.C.*,

    723 F. App'x 871 (11th Cir. 2018) ......................................................................18

*Sculptchair, Inc. v. Century Arts, Ltd.*, 94 F.3d 623 (11th Cir. 1996). ....................10

*SG Design & Mfg. Co. v. Vigor Int'l Ltd.*, No. 1:09-cv-750,

    2010 WL 11602013 (N.D. Ga. May 18, 2010)............................................. 13, 14

*Southland Sod Farms v. Stover Seed Co.*, 108 F.3d 1134 (9th Cir. 1997) ..............27

*Teasley v. Toyota Motor Corp.*, No. 4:22-CV-00049-JPB,

    2022 WL 17419551 (N.D. Ga. Dec. 5, 2022)........................................ 11, 14, 18

*Tech Enters., Inc. v. Wiest*, 428 F. Supp. 2d 896 (W.D. Wis. 2006) ........................8

*Thomas v. Strange Eng'g, Inc.*, No. 1:11-cv-074,

    2012 WL 993244 (S.D. Ga. Mar. 22, 2012) .......................................................12

*Tidikis v. Network for Med. Commc'ns & Rsch. LLC*,

    619 S.E.2d 481 (Ga. Ct. App. 2005)...................................................................23

*Time Warner Cable, Inc. v. DIRECTV, Inc.*, 497 F.3d 144 (2d Cir. 2007)............27

*Titshaw v. Georgia*, 907 S.E.2d 835 (Ga. 2024).................................................. 27, 28

*United Mine Workers of Am. v. Gibbs*, 383 U.S. 715 (1966) ................................8, 9

*Vanity Fair Mills, Inc. v. T. Eaton Co.*, 234 F.2d 633 (2d Cir. 1956) ......................7

*Wachovia Ins. Servs. v. Fallon*, 682 S.E.2d 657 (Ga. Ct. App. 2009)....................25

*Walden v. Fiore*, 571 U.S. 227 (2014)............................................................. 17, 18

*Weight Watchers Int'l, Inc. v. Norm, Inc.*, 403 F. Supp. 3d 361 (S.D.N.Y. 2019 ...26

*Weiland v. Palm Beach Cty. Sheriff's Off.*, 792 F.3d 1313 (11th Cir. 2015) ..........22

## STATUTES

15 U.S.C. § 1125(A)(1)(A) ...................................................................................3

15 U.S.C. § 1125(A)(1)(B) ............................................................................. 3, 26

15 U.S.C. § 1125(A)(3)...........................................................................................3

28 U.S.C. § 1331 ....................................................................................................5

28 U.S.C. § 1332(a) ...............................................................................................5

28 U.S.C. § 1367(a) ...............................................................................................7

O.C.G.A. § 10-1-420................................................................................................3

O.C.G.A. § 10-1-760..............................................................................................24

O.C.G.A. § 10-1-761..............................................................................................24

O.C.G.A. § 10-1-767(a)..........................................................................................24

O.C.G.A. § 23-3-55.................................................................................................3

O.C.G.A. § 9-10-91........................................................................................ 10, 12

O.C.G.A. § 9-3-24.................................................................................27

O.C.G.A. § 9-3-31.................................................................................23

**RULES**

Federal Rules of Civil Procedure 12(b)(1) ........................................1, 5

Federal Rules of Civil Procedure 12(b)(2) ........................................1, 9

Federal Rules of Civil Procedure 12(b)(6) ...................................... 1, 21

Federal Rules of Civil Procedure 4(e) ................................................10

Counterclaim Defendants Modulus-X Precision Machining Ltd. ("Modulus-X"), Key Rigging Equipment Ltd. ("Key Rigging"), and Mr. Dean Collins ("Collins") (collectively "Counterclaim Defendants"), pursuant to Federal Rules of Civil Procedure 12(b)(1), 12(b)(2), and 12(b)(6), file this Memorandum of Law in support of their Motion to Dismiss (the "Motion") all counterclaims filed by Defendant ModTruss, Inc. ("ModTruss"). Counterclaim Defendants' Motion is timely. (Dkt. 29.) In support, Defendants show the Court as follows:

## I.    INTRODUCTION

Modulus-X initiated the underlying declaratory judgment litigation after receiving a cease-and-desist letter accusing it of infringing ModTruss's trademarks and trade dress. (Dkt. 1 at 5, ¶ 15.) In response, ModTruss improperly attempts to use Lanham Act, Georgia statutes, and Georgia common law to join two Canadian citizens who have no connection to Georgia as Counterclaim Defendants and to ask this Court to resolve obscure allegations relating to infringement of Canadian trademarks and a dispute involving alleged Canadian contracts—for which this Court lacks subject matter jurisdiction. (Dkt. 11 at 9-10; 21-28; 30, ¶¶ 9-10; 41-66; 70; 72-73; 80.) Their effort should not be countenanced.

First, ModTruss's attempt to adjudicate a dispute involving Canadian trademarks and separate (unattached) contracts allegedly executed by a Canadian citizen in Canada exceeds this Court's jurisdictional limits.

1

Second, the Counterclaims do not provide sufficient facts—and there are none—to establish personal jurisdiction over the joined Counterclaim Defendants and thus the exercise of personal jurisdiction over them would violate their Constitutional due process rights and would offend traditional notions of fair play and substantial justice. Specifically, Key Rigging is not incorporated in Georgia or a resident of Georgia, nor does it do any business in Georgia. Rather, Key Rigging is a British Columbia, Canada-based business that exclusively supplies the Vancouver film, TV, and special events industries with rigging equipment rental and sales. Likewise, Collins is a Canadian citizen, residing and working in Burnaby, British Columbia, Canada.

Third, ModTruss's Counterclaims provide nothing more than conclusory statements and fail to adequately plead claims upon which relief can be granted.

Accordingly, the Counterclaims should be dismissed for lack of subject matter jurisdiction, lack of personal jurisdiction, and failure to state a claim.

## II.    PROCEDURAL HISTORY

Modulus-X filed its Complaint for Declaratory Judgement of Noninfringement and Invalidity of ModTruss's Trademark and Trade Dress on September 27, 2024. (Dkt. 1.) ModTruss filed its Answer to the Complaint on December 2, 2024. (Dkt. 11.) The Answer contained a multitude of Counterclaims along with joinder of Collins and Key Rigging. *Id*. Specifically, ModTruss asserted

the following counterclaims: (1) trade dress infringement (15 U.S.C. § 1125(A)(3)) against Modulus-X and Key Rigging, (2) unfair competition (15 U.S.C. § 1125(A)(1)(A)) against Modulus-X and Key Rigging, (3) false advertising (15 U.S.C. § 1125(A)(1)(B)) against Modulus-X and Key Rigging, (4) Georgia statutory unfair competition (O.C.G.A. § 23-3-55) against Modulus-X and Key Rigging, (5) Georgia common law unfair competition against Modulus-X and Key Rigging, (6) Georgia statutory false advertising (O.C.G.A. § 10-1-420 *et al.*) against Modulus-X and Key Rigging, (7) Georgia common law unjust enrichment against Modulus-X and Key Rigging, (8) Georgia common law misappropriation and conversion against Modulus-X and Collins, (9) breach of contract against Key Rigging, and (10) tortious interference with contractual relations against Collins. (Dkt. 11 at 31-39.) Counsel for Key Rigging and Collins executed a waiver of the service of summons on December 20, 2024, which explicitly preserved "all defenses and objections to this lawsuit [and] the court's jurisdiction." (Dkts. 21-22.) Counterclaim Defendants submitted a Consent Motion for Extension of Time on February 11, 2025, which the Court granted. (Dkts. 28-29.)

## III.   STATEMENT OF FACTS

### A. MR. DEAN COLLINS

Collins is the founder, owner, and president of Modulus-X. (Ex. A, Declaration of Dean Collins at ¶ 1.) Additionally, Collins is the president and

owner of Key Rigging. (*Id*. at ¶ 2.) Collins is a Canadian citizen that resides in Burnaby, British Columbia, Canada. (*Id*. at ¶ 8.) Collins maintains no permanent residence within the United States. (*Id*. at ¶ 9.) Indeed, Collins has no office, mailing address, post office box, or telephone listing in Georgia, nor has he ever owned or rented real property or held personal bank accounts in the State. (*Id*. at ¶ 10.) Further, Collins has never paid taxes to the State of Georgia. (*Id*. at ¶ 11.)

Collins has never traveled to Georgia in his personal capacity nor in his capacity as President of Key Rigging. (*Id*. at ¶¶ 12-13.) His involvement in legal matters in Georgia is exclusively limited to the case at hand in his capacity as President of Modulus-X, marking his first and only interaction with the State's judicial system. (*Id*. at ¶ 14.) Critically, Collins has never directed any personal activities toward Georgia, nor has he engaged in any regular, continuous, or ongoing relationships within the state. (*Id*. at ¶ 16.)

### B.  KEY RIGGING EQUIPMENT LTD.

Key Rigging is a Canadian company registered to do business and headquartered in British Columbia, Canada since 2002. (*Id.* at ¶ 17.) Specifically, Key Rigging, with offices located in Burnaby, British Columbia, exclusively "supplies the ***Vancouver*** film, TV and special events industries with rigging equipment rental and sales." (*Id.* at ¶¶ 18-19.) Indeed, Key Rigging only serves the Metro-Vancouver, Canada area. (*Id.* at ¶ 18.) Key Rigging does not maintain any

offices or employees in Georgia. (*Id*. at ¶ 21.) Further, Key Rigging does not—nor

has it ever—conducted any business in the state of Georgia. (*Id*. at ¶ 22.) Key

Rigging does not, nor has it ever, paid taxes to the State of Georgia. (*Id*. at ¶ 23.)

Accordingly, Key Rigging has never directed any activities or conduct toward

Georgia and has never engaged in any regular, continuous or ongoing relationships

in Georgia. (*Id*. at ¶¶ 24; 26.)

## IV.    ARGUMENTS AND CITATIONS OF AUTHORITY

### A. LACK OF SUBJECT MATTER JURISDICTION

ModTruss has failed to sufficiently plead a basis for subject matter

jurisdiction. Pursuant to Fed. R. Civ. P. 12(b)(1), subject matter jurisdiction defines

the Court's mandate to hear a type of case and the "extent to which a court can rule

on the conduct of persons or status of things." *Carlsbad Tech., Inc. v. HIF Bio,

Inc.*, 556 U.S. 635, 639 (2009). "In a given case, a federal district court must have

at least one of three types of subject matter jurisdiction: (1) jurisdiction under a

specific statutory grant; (2) federal question jurisdiction pursuant to 28 U.S.C. §

1331; or (3) diversity jurisdiction pursuant to 28 U.S.C. § 1332(a)." *Baltin v.

Alaron Trading Corp.*, 128 F.3d 1466, 1469 (11th Cir. 1997). ModTruss cites to

U.S. trademark law as its justification for this Court having jurisdiction here. (Dkt.

11 at 9, ¶ 7.) A federal court may dismiss a federal claim for lack of subject matter

jurisdiction only if "(1) the alleged claim under the Constitution or federal statutes

clearly appears to be immaterial and made solely for the purpose of obtaining jurisdiction; *or* (2) such a claim is wholly insubstantial and frivolous." *Int'l Café v. Hard Rock Cafe Int'l*, 252 F.3d 1274, 1277 (11th Cir. 2001) (emphasis added).

### 1. *ModTruss Cannot Assert A Claim Of Infringement For A Canadian Trademark.*

The claims of trademark infringement alleged by ModTruss are in fact, frivolous as they include an assertion of infringement of a Canadian trademark (TMA1227479) (the "ModTruss Mark"). (Dkt. 11 at 12; 32, ¶¶ 18; 88-93; *id*. at 40.) Indeed, ModTruss lumps together its Canadian trademark with the U.S. trademark and defines them as the "ModTruss Trademark." (Dkt. 11 at 12, ¶ 18.)

The concept of territoriality is basic to trademark law. *Meenaxi Enter., Inc. v. Coca-Cola Co.*, 38 F.4th 1067, 1069 (Fed. Cir. 2022). In essence, trademark rights "exist in each country solely according to that country's statutory scheme." *Id*. "The territoriality doctrine states that a trademark has a separate existence in each sovereign territory in which it is registered or legally recognized as a mark." *Int'l Cosms. Exch., Inc. v. Gapardis Health & Beauty, Inc.*, 303 F.3d 1242, 1248 n.3 (11th Cir. 2002). Basically, the usage of a trademark such as the ModTruss Mark in Canada is irrelevant to the strength of the marks in the U.S. and is not within the jurisdiction of a U.S. Federal Court. *See E. Remy Martin & Co., S.A. v. Shaw-Ross Int'l Imps., Inc.*, 756 F.2d 1525, 1531 (11th Cir. 1985). Accordingly,

this Court lacks subject matter jurisdiction to determine the rights associated with ModTruss's Canadian Trademark.

In addition, the Lanham Act, which governs trademarks and trade dress in the United States, does not create private rights for acts of unfair competition or trade dress infringement occurring in foreign countries. *Vanity Fair Mills, Inc. v. T. Eaton Co.*, 234 F.2d 633, 643-45 (2d Cir. 1956); *see also Int'l Café, S.A.L.*, 252 F.3d at 1278-79 (stating that the use of a trademark in a foreign country is subject to the laws of that country, not U.S. law). In regard to an alleged infringement of a trade dress or trademark in a foreign country, this Court lacks subject matter jurisdiction.

### 2. *This Court Lacks Jurisdiction to Hear ModTruss's Contract Claims Against Key Rigging and Collins.*

Additionally, ModTruss asserts separate state law claims for breach of contract against Key Rigging and for misappropriation and tortious interference with contractual relations against Collins. (Dkt. 11 at 38-39, ¶¶ 124-131.) According to their Counterclaims, this Court's jurisdiction "arises under the trademark laws of the United States." (Dkt. 11 at 9, ¶ 6.) The Complaint further asserts that this Court has supplemental authority to adjudicate state law claims pursuant to 28 U.S.C. § 1367(a). (*Id.* at 9, ¶ 8.)

However, there is not a single federal claim against Collins in his personal capacity to justify this Court's exercise of subject matter jurisdiction. Further, the

exercise of supplemental jurisdiction is a power within a court's sound discretion, and not a plaintiff's right. *United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 726 (1966). Section 1367 permits courts to maintain jurisdiction over state law claims "so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution." *See also City of Chicago v. Int'l College of Surgeons*, 522 U.S. 156, 173 (1997). A litigant cannot piggyback state law misappropriation and breach of contract claims onto a federal trademark infringement action where the former lacks a nexus with the latter. *See Tech Enters., Inc. v. Wiest*, 428 F. Supp. 2d 896, 902 (W.D. Wis. 2006) (dismissing state law misappropriation of trade secret and contract claims as unrelated to federal Lanham Act claims). Thus, the Court must consider whether the state and federal claims derive from a common nucleus of operative fact. *United Mine Works of Am.*, 383 U.S. at 725.

Here, ModTruss's only claims against Collins relate to alleged contracts between ModTruss and Key Rigging. As ModTruss admits, the alleged contracts were dealer agreements involving the sale of ModTruss products within Canada. (Dkt. 11 at 21-22, ¶¶ 45; 47-48). Importantly, the misappropriation and contract claims against Key Rigging and Collins do not relate to the federal trademark claims against Modulus-X which this Court would have original jurisdiction over.

Exercising jurisdiction here would be contrary to judicial economy, convenience, and fairness to the parties. *United Mine Works. Of Am.*, 383 U.S. at 726. Bringing a Canadian citizen into a litigation on such a weak connection to the case at hand would be unfair to Collins, complicate the proceedings, and expend judicial resources unnecessarily. As such, the Court would be well within its discretionary power to dismiss the claims relating to contracts against Collins and Key Rigging for a lack of supplemental jurisdiction.

### B. LACK OF PERSONAL JURISDICTION

For a motion to dismiss for lack of personal jurisdiction under Rule 12(b)(2), the party attempting to assert federal court jurisdiction over a nonresident defendant bears the burden of establishing a *prima facie* case of jurisdiction over said nonresident defendant. *Brown v. Ford Motor Co.*, 347 F. Supp. 3d 1347, 1349 (N.D. Ga 2018) (citing *Morris v. SSE, Inc.*, 843 F.2d 489, 492 (11th Cir. 1988)). The plaintiff must allege sufficient facts to establish the basis for the exercise of personal jurisdiction. *Com. Cas. Ins. Co. v. BSE Mgmt., Inc.*, 734 F. Supp. 511, 514 (N.D. Ga. 1990). "When a defendant raises through affidavits, documents or testimony a meritorious challenge to personal jurisdiction, the burden shifts to the plaintiff to prove jurisdiction by affidavits, testimony or documents." *Sculptchair, Inc. v. Century Arts, Ltd.*, 94 F.3d 623, 627 (11th Cir. 1996).

A federal court's jurisdiction over a nonresident defendant is controlled by the laws of the forum state. Fed. R. Civ. P. 4(e). The analysis of personal jurisdiction involves a two-step process of (1) whether Georgia's Long Arm statute authorizes the exercise of personal jurisdiction, and (2) whether the exercise of personal jurisdiction satisfies Constitutional Due Process requirements. *See Brown*, 347 F. Supp. 3d at 1349.

Georgia's Long Arm statute provides that a court may exercise jurisdiction over a non-resident defendant if it transacts business in Georgia, commits a tortious act in Georgia, or causes a tortious injury in Georgia by an act outside of Georgia but it regularly solicits business or derives substantial revenue from goods and services sold in Georgia. O.C.G.A. § 9-10-91.

Due process permits the exercise of personal jurisdiction over a nonresident defendant only when that party has purposefully availed itself of the benefits and protections of the forum state by establishing "minimum contacts" with the state, and when the exercise of jurisdiction over that party would not offend traditional notions of fair play and substantial justice. *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945). The "constitutional touchstone" of this inquiry is whether the nonresident defendant has purposefully established minimum contacts in the forum state "such that [it] should reasonably anticipate being haled into court there." *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 474 (1985). Determination of

10

minimum contacts for the purpose of exercising personal jurisdiction over a

nonresident defendant may be satisfied if the Court has either general or specific

jurisdiction. *See Ford Motor Co. v. Montana Eighth Jud. Dist. Ct.*, 592 U.S. 351,

358 (2021) (recognizing two kinds of jurisdiction general and specific).

### 1. *Georgia's Long Arm Statute Does Not Authorize the Exercise of Personal Jurisdiction Over Key Rigging or Collins.*

#### i. *They Do Not Transact Any Business in Georgia.*

"Under subsection (1) of the statute, a foreign corporation transacts business

in Georgia when it has purposefully done some act or consummated some

transaction in Georgia." *Teasley v. Toyota Motor Corp.*, No. 4:22-CV-00049-JPB,

2022 WL 17419551, at *2 (N.D. Ga. Dec. 5, 2022). Under this subsection, court

will consider "whether the defendant: has offices, manufacturing plants or

distribution facilities in Georgia; has ever registered to do business in the state; has

employees, distributors or sales representatives residing or working in Georgia;

pays taxes in Georgia; targets Georgia through print, television, radio or Internet

advertising; or directly sells its products in Georgia or to distributors located in

Georgia." *Id.* (citation omitted).

Neither Key Rigging nor Collins "transact business" in Georgia. (*See* Ex A.)

Indeed, Key Rigging only conducts business within Canada. (*Id.* at ¶¶ 17-20.)

Further, the purported agreement that ModTruss heralds as a cause of action

against Key Rigging and Collins are, in ModTruss's own words, an agreement

"granting Key Rigging status as ModTruss's exclusive dealer in ***Vancouver, Canada***, for an 18-month period[.]" (Dkt. 11 at 21, ¶ 45 (emphasis added).) ModTruss further mentions a proposed agreement through Collins that Key Rigging "be permitted to be the exclusive ***Canadian manufacturer*** and seller of ModTruss products." (*Id*. at 23, ¶ 51 (emphasis added).) ModTruss has not alleged any specific actions by Collins or Key Rigging that would constitute transacting business within the state of Georgia under the long arm statute.

### ii. *They Have Not Committed Any Tortious Act in Georgia.*

Further, subsection 2 is inapplicable because neither Counterclaim Defendant committed any tortious act in Georgia and the Complaint does not identify any. (*See* Ex. A.) "The clear language of subsection (2) requires that the nonresident defendant commit a tortious act in the state of Georgia." *Thomas v. Strange Eng'g, Inc.*, No. 1:11-cv-074, 2012 WL 993244, at *4 (S.D. Ga. Mar. 22, 2012) (citing O.C.G.A. § 9–10–91(2)); *see also LabMD, Inc. v. Tiversa, Inc.*, 509 F. App'x 842, 844–45 (11th Cir. 2013) (finding where defendants "used computers outside of Georgia" to commit the alleged acts, they were not subject to personal jurisdiction in Georgia under subsection (2)); *Anderson v. Deas*, 615 S.E.2d 859, 862 (Ga. Ct. App. 2005) (finding that because the alleged telephone calls causing injury in Georgia were placed outside the state, they could not support jurisdiction under subsection (2)); *SG Design & Mfg. Co. v. Vigor Int'l Ltd.*, No. 1:09-cv-750,

2010 WL 11602013, at *4–5 (N.D. Ga. May 18, 2010) (finding no jurisdiction under subsection (2) where the allegedly infringing products were designed, manufactured, and shipped in China, and the sale of the products was negotiated exclusively from China).

Without any basis or citing to any facts, ModTruss inaccurately alleges that both Modulus-X and Key Rigging, advertise, market, promote, and offer goods and services that bear the infringing trademark and trade dress, target customers, misappropriate ModTruss's confidential information in Georgia. (Dkt. 11 at 9-10, ¶ 9.) Yet Key Rigging *only* serves the Vancouver area. (Ex. A at ¶ 18-19.) Indeed, ModTruss even admits Key Rigging is a Canadian distributor that only operates outside the United States. (Dkt. 11 at 21; 23, ¶¶ 42; 45; 51; Dkt. 11-5; Dkt. 11 at 23, ¶ 52 ("there was insufficient demand from one client, *Key Rigging, to justify establishing an entirely new manufacturing center outside of the United States*.") (emphasis added).)

Further, with respect to Collins, the Counterclaims utterly fail to allege any act by Collins in Georgia in his individual capacity. In its claim of jurisdiction over Collins, ModTruss asserts this Court has jurisdiction over Collins due to his inducement and direction of Key Rigging to breach its contract with ModTruss and harming ModTruss, including in Georgia. (Dkt. 11 at 9-10, ¶ 9.) Again, this is unsupported. First, the purported contracts between the entities would be Canadian

contracts governing acts in Canada. Second, as mentioned repeatedly, Key Rigging has not done or directed any act in Georgia therefore, it is impossible for Collins to have induced or directed Key Rigging to act in Georgia. (*See* Ex. A.) Accordingly, ModTruss fails to meet subsection 2 of the long arm statute.

### iii. They Do Not Have Any Regular or Persistent Conduct in Georgia, Nor Do They Derive Revenue From Georgia.

Subsection 3 of the statute requires that the plaintiff must show both an injury in Georgia **and** one of three requirements: (1) that defendant regularly does or solicits business, (2) engages in any other persistent course of conduct, or (3) derives substantial revenue from goods used or consumed or services rendered in Georgia. *Teasley*, No. 4:22-CV-00049-JPB, 2022 WL 17419551, at *3 (quotation and citation omitted); *see also SG Design*, No. 1:09-CV-750-TCB, 2010 WL 11602013, at *5-6 (finding no jurisdiction under subsection (3) where defendant never maintained any corporate location, leasehold, business office, manufacturing facility or sales location in Georgia; never conducted marketing or advertising in Georgia; never was authorized to do business in Georgia; did not have an agent for service of process in Georgia; never maintained any bank or brokerage accounts in Georgia; never owned property in Georgia; and never had any employees transact business in Georgia on its behalf).

Here, neither Key Rigging nor Collins do *any* business in Georgia let alone conduct regular business here or derive substantial revenue from Georgia. (*See* Ex.

A.) Indeed, Key Rigging only operates in the Metro-Vancouver area. (*Id*. at ¶ 18.) Any conduct by Collins in Georgia occurs in his capacity ***only*** as owner and president of Modulus-X. (*Id*. at ¶¶ 9-13.) Even still, Collins has made only two visits to Georgia for tradeshows on behalf of Modulus-X, which cannot be considered regularly conducting business, consistent conduct within the State, nor can it be considered deriving substantial revenue from business in Georgia. (*Id*. at ¶ 15.) *See also Catholic Stewardship Consultants, Inc. v. Ruotolo Assocs., Inc.*, 608 S.E.2d 1, 4 (Ga. Ct. App. 2004). Indeed, the specific instances of conduct mentioned by ModTruss involve Key Rigging's operations *in Canada* with Collins being referenced in those negotiations. (Dkt. 11 at 21-23, ¶¶ 45-48; 51-53.) Accordingly, ModTruss cannot meet subsection 3 of the long arm statute.

### 2. *Counterclaim Defendants Lack Necessary Minimum Contacts.*

Neither Counterclaim Defendant has the requisite minimum contacts with Georgia and exercising jurisdiction over them would violate the due process clause and would offend traditional notions of fair play and substantial justice.

#### i. *ModTruss Cannot Establish General Jurisdiction.*

General jurisdiction is generally limited to a defendant's place of incorporation and its principal place of business. *See BNSF Railway Co. v Tyrrell*, 581 U.S. 402, 413 (2017); *Daimler AG v. Bauman*, 571 U.S. 117, 136-37 (2014)). For a corporation, general jurisdiction is satisfied only if (1) the corporation is

incorporated in the forum state; (2) the corporation maintains its principal place of business in the forum state; or (3) there is an exceptional circumstance that would allow a court to determine that the corporation is virtually at home in the forum state. *Ford Motor Co.*, 592 U.S. at 358-359. Regarding an individual, he may be subjected to general jurisdiction in his place of domicile. *Daimler*, 571 U.S. at 137.

This Court does not have general jurisdiction over the Counterclaim Defendants because they are not domiciled here and do not have continuous or systematic contacts with Georgia. (*See* Ex A.) Key Rigging does not have any employees, does not pay taxes, and is not registered to do business in Georgia. (*Id.* at ¶¶ 20-26.) Similarly, Collins has only visited Georgia two times as part of his duties as **CEO of Modulus-X**. (*Id.* at ¶ 15.) Further, ModTruss does not allege any exceptional circumstances that would render Key Rigging or Collins at home in Georgia. *See Daimler*, 571 U.S. at 129–33 (describing frequency and type of activities that support general jurisdiction).

ii.  *ModTruss Cannot Establish Specific Jurisdiction.*

In contrast to general jurisdiction, "specific jurisdiction is confined to adjudication of issues deriving from, or connected with, the very controversy that establishes jurisdiction." *Bristol-Myers Squibb Co. v. Super. Ct. of Calif., San Francisco Cnty.*, 582 U.S. 255, 264 (2017) ("BMS"); *Goodyear Dunlop Tires Operations, S.A. v. Brown,* 564 U.S. 915, 919 (2011). "[T]here must be an

'affiliation between the forum and the underlying controversy, principally, [an] activity or an occurrence that takes place in the forum State.'" *BMS*, 582 U.S. at 264 (quoting *Goodyear*, 564 U.S. at 919). The test articulated in *BMS* "serves to *narrow* the class of claims over which a state court may exercise specific jurisdiction." *Ford Motor Co*., 592 U.S. at 361-62 (emphasis added). The plaintiff "cannot be the only link between the defendant and the forum." *Walden v. Fiore*, 571 U.S. 227, 285 (2014). Merely placing a product into the stream of commerce, without more, is not enough. *Daimler*, 571 U.S. at 132–33. Rather, specific jurisdiction focuses on a "substantial" connection between a defendant's contacts with the state and the lawsuit. *Id.* at 284; *see also Ford Motor Co.*, 592 U.S. at 352 (noting "this Court's requirement of a 'connection' between a plaintiff's suit and a defendant's activities" in determining specific jurisdiction).

To establish specific jurisdiction, the Eleventh Circuit has established a three-part test: (1) whether the plaintiff's claims "arise out of or relate to" at least one of the defendant's contacts with the forum; (2) whether the nonresident defendant "purposefully availed" himself of the privilege of conducting activities within the forum state, thus invoking the benefit of the forum state's laws; and (3) whether the exercise of personal jurisdiction comports with "traditional notions of fair play and substantial justice." *Rowe v. Gary, Williams, Parteni, Watson & Gary, P.L.L.C.*, 723 F. App'x 871, 875 (11th Cir. 2018) (quoting *Louis Vuitton*

*Malletier, S.A. v. Mosseri*, 736 F.3d 1339, 1355 (11th Cir. 2013)). The Supreme Court has clarified that "purposeful availment" required that the nonresident defendant "deliberately 'reached out beyond' its home." *Ford Motor Co.,* 592 U.S. at 359 (citing *Walden*, 571 U.S. at 285). "The plaintiff has the burden to establish the first two factors, after which the burden shifts to the defendant to establish the third, i.e., "make a 'compelling' case that the exercise of jurisdiction would violate traditional notions of fair play and substantial justice." *Teasley*, No. 4:22-CV-00049-JPB, 2022 WL 17419551, at *4 (quoting *Louis Vuitton*, 736 F.3d at 1355).

ModTruss has not alleged any factual or legal basis sufficient to satisfy the constitutional requirements for specific personal jurisdiction over Key Rigging or Collins because they have not purposefully directed any activities toward Georgia that relate to ModTruss's trademark claims. *See Ford Motor Co.*, 592 U.S. at 361. By way of proof, ModTruss points to purported agreements—between ModTruss and Key Rigging, not Collins—that govern actions ***in Canada***, not Georgia. (Dkt. 11 at 21-23, ¶¶ 45-50.) Key Rigging has not sold products in Georgia, manufactured products in Georgia, or taken any other action by which it would reasonably expect its products to reach Georgia. (*Id*. at ¶¶ 20-26.) Neither has any contacts with Georgia related to the allegations giving rise the to the claims against them. They have neither purposefully directed any activities related to ModTruss's claims toward Georgia, nor purposefully availed themselves of doing business

here. These Canadians have no continuous and systematic presence in Georgia, did not sell the allegedly infringing products at issue here, and did not direct any activities related to the accused products toward Georgia. (*See* Ex. A.) Further, Key Rigging has no footprint in Georgia, does not maintain a place of business or properties or have any employees in Georgia. (*See* Ex. A.) Key Rigging does not even maintain a local listing in telephone or business directories in Georgia. (*Id.* at ¶ 25.) Indeed, Key Rigging's work occurred solely in Canada. (*Id.* at ¶ 18.) None of Key Rigging's work occurred in, or was directed toward, the state of Georgia. *Id.* at ¶¶ 17-26. Additionally, Collins has not taken any action in his personal capacity, that would lead him to anticipate being haled into this forum, nor does ModTruss even allege as much. (Dkt. 11.)

### iii. Exercising Personal Jurisdiction Would Offend Traditional Notions Of Fair Play And Substantial Justice.

Courts shall not exercise jurisdiction over defendants when doing so would offend traditional notions of fair play and substantial justice. *Int'l Shoe Co.*, 326 U.S. at 316. The requirement of fair play and substantial justice informs the court's analysis of what constitutes minimum contacts sufficient to confer jurisdiction. *Madara v. Hall*, 916 F.2d 1510, 1517 (11th Cir. 1990). Where factors supporting fair play are absent, a court may not assert personal jurisdiction even if the defendant's contacts with the forum are several. *Id*. Moreover, even if a defendant has purposefully engaged in activities in the forum, minimum requirements of fair

19

play and substantial justice may defeat the reasonableness of asserting personal jurisdiction. *Allegiant Physicians Servs. v. Sturdy Mem. Hosp.*, 926 F. Supp. 1106, 1114 (N.D. Ga. 1996). Indeed, to make this determination, this Court must consider relevant factors including "[1] the burden on the defendant in defending the lawsuit, [2] the forum state's interest in adjudicating the dispute, [3] the plaintiff's interest in obtaining convenient and effective relief, [4] the interstate judicial system's interest in obtaining the most efficient resolution of controversies and, [5] the shared interest of the states in furthering fundamental substantial social policies." *Madara*, 916 F.2d at 1517 (citing *Burger King*, 471 U.S. at 477).

Here, the exercise of jurisdiction over Collins and Key Rigging would offend traditional notions of fair play and substantial justice. Counterclaim Defendants would suffer a significant burden if they are required to defend themselves in Georgia. Neither live or work in Georgia. (Ex. A at ¶¶ 8-9; 17-20.) The costs, time, and effort associated with each defending a lawsuit in another country are significant. A company that exclusively does business in Canada and its resident officer should not be forced to litigate in Georgia—claims that likely are well past the statute of limitations as the claims exclusively deal with a breach of a purported 2016 agreement that governs actions in Canada. (Dkt. 11 at 9-10, ¶ 9.) Georgia has no discernable interest in adjudicating claims regarding actions in

Canada governed by Canadian law. Dismissal of Key Rigging and Collins will not impact the remaining issues between the remaining parties.

### C. FAILURE TO STATE A CLAIM

To withstand a motion to dismiss under Rule 12(b)(6), a complaint must allege sufficient factual matter to state a facially plausible claim for relief. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Allegations merely consistent with liability do not cut it; rather, the allegations must indicate or permit the reasonable inference, without speculation, of liability for the conduct alleged. *See Ashcroft*, 556 U.S. at 678. All factual allegations must be taken as true, but legal conclusions merely couched as factual allegations may be disregarded. *See id*.

"[A] plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555 (citing *Papasan v. Allain*, 478 U.S. 265, 286 (1986)). Mere legal conclusions "are not entitled to the assumption of truth." *Iqbal*, 556 U.S. at 678-79. A plaintiff must plead enough facts to state a claim to relief that is plausible on its face so that the defendant has fair notice of what the claim is and the grounds upon which it rests. *See Twombly*, 550 U.S. at 555.

Pursuant to *Twombly*, a plaintiff must not merely allege conduct that is conceivable but must instead allege "enough facts to state a claim to relief that is plausible on its face." *Id*. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 556). "('Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice.'). Here, the many unsupported assertions within the complaint fail to give the defendants adequate notice for the claims against them and the grounds upon which each claim rests." *Real v. Moran*, No. 22-12770, 2023 WL 6891273, at *4 (11th Cir. Oct. 19, 2023) (quoting *Weiland v. Palm Beach Cty. Sheriff's Off.*, 792 F.3d 1313, 1321-23 (11th Cir. 2015)). Where there is simply no factual content that allows the court to draw a reasonable inference that the defendant is liable for the misconduct alleged, the complaint is subject to dismissal for failure to state a claim. *See Iqbal*, 556 U.S. at 678.

### 1. *Counterclaim 10 Fails to State A Claim For Relief Against Collins and Exceed the Statute of Limitations.*

ModTruss has not pled facts sufficient to show that Collins tortiously interfered with its contractual relationships. To prove tortious interference with contractual relations, a plaintiff must show that a valid contract existed, defendant acted intentionally and without privilege or legal justification, the defendant

induced a third party to breach the contract, and plaintiff suffered damages. *See Meadow Springs, LLC v. IH Riverdale, LLC*, 747 S.E.2d 47, 50 (Ga. Ct. App. 2013). The Complaint presents only vague, conclusory statements about a 2016 confidentiality agreement between ModTruss and Key Rigging in which Collins, as Key Rigging's leader, allegedly induced Key Rigging to violate by inducing or directing Key Rigging to sell products that violate a separate Key Rigging dealer agreement. (Dkt. 11 at ¶¶ 129-131.) Yet there are *no facts* to establish that Collins acted with requisite intent to induce *a third party* to breach a valid, enforceable contract. The crux of the ModTruss's claim is that Collins, as the owner of Key Rigging, interfered with contractual relations; however, under Georgia law, a party to the contract or an agent of a party, such as an owner, cannot be considered a third party for the purposes of tortious interference. *See Atlanta Mkt. Ctr. Mgmt., Co. v. McLane,* 503 S.E.2d 278, 283 (Ga. 1998) ("in order to be liable for tortious interference, one must be a stranger to both the contract at issue and the business relationship giving rise to and underpinning the contract.") Collins, acting within the scope of his authority as owner, is inherently part of the contracting entity and cannot be deemed to have interfered with the contract. *See Tidikis v. Network for Med. Commc'ns & Rsch. LLC,* 619 S.E.2d 481, 486-87 (Ga. Ct. App. 2005).

Furthermore, ModTruss's claims for tortious interference with contract are subject to a four-year statute of limitations. *Long v. A.L. Williams & Assocs., Inc.,*

323 S.E.2d 868, 870 (Ga. Ct. App. 1984) (citing O.C.G.A. § 9-3-31). ModTruss's

tortious interference claims are time-barred because they are based on conduct pre-

dating 2021. ModTruss does not identify any post-2021 actions taken by Collins

that interfered with any relationship. Thus, the tortious interference claims should

be dismissed with prejudice on statute of limitations grounds.

### 2. *Counterclaim 8 Fails To State A Claim Under Georgia Common Law Misappropriation And Conversion.*

Counterclaim 8 fails to state a claim because there is no such thing as

misappropriation and conversion under Georgia common law. *See* O.C.G.A. § 10-

1-767(a) ("this article shall supersede conflicting tort, restitutionary, and other laws

of this state."); *Opteum Fin. Servs., LLC v. Spain*, 406 F. Supp. 2d 1378, 1380

(N.D. Ga. 2005) (GTSA remedies are exclusive; alternate theory of recovery not

allowed). O.C.G.A. § 10-1-761 (2) provides: "'Misappropriation' means . . .

[d]isclosure or use of a trade secret of another without express or implied consent

by a person who: . . . [a]t the time of disclosure or use, knew or had reason to

know that knowledge of the trade secret was . . . [a]cquired under circumstances

giving rise to a duty to maintain its secrecy or limit its use." *See Contract*

*Furniture Refinishing & Maint. Corp. v. Remanufacturing & Design Grp., LLC*,

730 S.E.2d 708, 714 (Ga. Ct. App. 2012). To obtain relief under the Georgia Trade

Secrets Act, O.C.G.A. § 10-1-760 *et al*, a plaintiff must demonstrate both that the

information in question constitutes a "trade secret" as defined by O.C.G.A. § 10-1-

761(4) and that the defendant(s) misappropriated that trade secret. *Wachovia Ins.*

*Servs. v. Fallon*, 682 S.E.2d 657, 662 (Ga. Ct. App. 2009). ModTruss failed to

identify any purported trade secret with any particularity, and the vague and self-

serving "Confidential Information" is disclosed in its patent. (Dkt. 11 at ¶ 18.)

### 3. *Counterclaims 1-7 And 9 Fail To State A Claim.*

ModTruss does not have a claim against Key Rigging as Key Rigging only

conducts business in Canada. (Ex. A at ¶¶ 17-20.) "It is a basic premise of our legal

system that, in general, 'United States law governs domestically but does not rule

the world.'" *Microsoft Corp. v. AT&T Corp.*, 550 U.S. 437, 454 (2007). ModTruss

even admits its purported contract with Key Rigging was isolated to business in

Canada. (Dkt. 11 at 21-22, ¶ 45.) "Extraterritorial application of the Lanham Act

permits federal courts to apply the act to a defendant's conduct that occurs outside

of the territorial boundaries of the United States when: (1) the defendant 'is a

United States corporation'; (2) 'the foreign activity had substantial effects in the

United States'; and (3) 'exercising jurisdiction would not interfere with the

sovereignty of another nation.'" *Chanel, Inc. v. Handbag Store*, No. 20-CV-62121,

2021 WL 3060329, at *6 (S.D. Fla. June 30, 2021), report and recommendation

adopted sub nom. *Chanel, Inc. v. Handbag Store*, No. 20-CIV-62121-RAR, 2021

WL 3053396 (S.D. Fla. July 20, 2021) (citation omitted). Here, ModTruss cannot

demonstrate any of the three factors to support extraterritorial jurisdiction. Key

Rigging is a Canadian company that does not and never has sold products or offered services in the United States. Ex. A. at ¶¶ 17-20. Key Rigging does not operate or try to sell products within the U.S. and as such U.S. trademark law does not have power over it. *See Microsoft Corp.*, 550 U.S. at 454.

Additionally, 15 U.S.C. § 1125(a)(1)(B) states "any person, who, on or in connection with any goods or services . . . in commercial advertising or promotion, misrepresents the nature, characteristics, qualities, or geographic origin of his or her or another person's goods, services, or commercial activities" shall be liable for false advertising under the Lanham Act. To prevail on a false advertising claim under 15 U.S.C. § 1125(a)(1)(B) "a plaintiff must plead (and ultimately prove) an injury to a commercial interest in sales or business reputation proximately caused by the defendant's misrepresentations." *Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 572 U.S. 118, 140 (2014). Section 1125(a)(1)(B) is a false advertising prohibition and does not relate to trademark infringement claims. *See Parks LLC v. Tyson Foods, Inc*, 863 F.3d 220, 226-27 (3d Cir. 2017).

ModTruss claims Key Rigging's website advertised having "the best load ratings and weight-to-strength ratio[n] in the industry" as an example of false advertising. (Dkt. 11 at 33, ¶ 95.) This is nonsense. The statements mentioned are obvious examples of commercial puffery. Puffery can be a statement such as "a general claim of superiority over comparable products." *See Weight Watchers Int'l,*

*Inc. v. Norm, Inc.*, 403 F. Supp. 3d 361, 369-70 (S.D.N.Y. 2019) (citing *Time Warner Cable, Inc. v. DIRECTV, Inc.*, 497 F.3d 144, 159 (2d Cir. 2007); *see Southland Sod Farms v. Stover Seed Co.*, 108 F.3d 1134, 1145 (9th Cir. 1997) (finding that a statement of fact is one that makes "a specific and measurable advertisement claim of product superiority"). Indeed, "[b]ald assertions of superiority" and "exaggerated, blustering, and boasting statement[s]" are nonactionable opinions. *Pizza Hut, Inc. v. Papa John's Int'l, Inc.*, 227 F.3d 489, 496–97 (5th Cir. 2000). Prosecution of this claim would require a campaign on every "world's greatest" cup of coffee or pizza.

### 4. Counterclaims 9-10 Fail To State A Claim Due To Exceeding Georgia's Contractual Statute Of Limitations.

ModTruss's claims that involve the breach of a confidentiality agreement from alleged 2016 and 2018 contracts fail to state a claim due to exceeding Georgia's statute of limitations. Breach-of-contract actions in Georgia have a six-year statute of limitations if they are premised on a written contract. *Titshaw v. Georgia*, 907 S.E.2d 835, 841 (Ga. 2024); O.C.G.A. § 9-3-24. The 2016 and 2018 contracts that serve as major catalysts for the allegations that ModTruss is trying to hook the non-resident Counterclaim Defendants into this action are almost ten and seven years old, respectively. (*See* Dkt. 11 at 37-39, ¶¶ 120-131.) For determining whether the statute of limitations applies "the threshold inquiry is to determine whether a written agreement actually exists between the parties such that any

implied duties sued upon would have grown directly out of the existence of the written contract itself." *Titshaw*, 907 S.E.2d at 841 (citation omitted). If there were written contracts signed in 2016 and 2018 (and have an 18-month term (Dkt. 11 at ¶ 45)), the breach claims would be barred by the statute of limitations.

## V.    CONCLUSION

For the foregoing reasons, the Counterclaim Defendants respectfully request that the Court dismiss ModTruss's counterclaims in their entirety.

Respectfully submitted this 13th day of March, 2025.

*/s/Katrina M. Quicker*
KATRINA M. QUICKER
Georgia Bar No. 590859
KATHRYN A. VANCE
Georgia Bar No. 783480
AUSTIN D. STEWART
Georgia Bar No. 158920
QUICKER LAW, LLC
900 Circle 75 Parkway, Suite 100
Atlanta, GA 30339
T: (678) 750-0450
kquicker@quickerlaw.com
kvance@quickerlaw.com
astewart@quickerlaw.com

Christopher J. Chan
Georgia Bar No. 120498
CHRISTOPHER J CHAN IP LAW, LLC
848 Mentelle Drive NE, Suite 200
Atlanta, GA 30308
T: (404) 625-9599
IP@christopherjchan.com

*Attorneys for Counterclaim Defendants*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on this date I electronically filed the foregoing with the Clerk of Court using the CM/ECF system, which served a true and correct copy on all counsel of record.

This 13th day of March, 2025.

/s/Katrina M. Quicker
KATRINA M. QUICKER
Georgia Bar No. 590859
QUICKER LAW, LLC
900 Circle 75 Parkway
Suite 100
Atlanta, GA 30339
T: (678) 750-0450
kquicker@quickerlaw.com

*Attorneys for Counterclaim Defendants*
